UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ANGELA M. COLLINS,

    Plaintiff,

v.                    Case No. 8:19-cv-2145-T-33TGW

SCHOOL BOARD OF PINELLAS
COUNTY, FLORIDA,

    Defendant.
_____/

**ORDER**

    This matter comes before the Court pursuant to Defendant School Board of Pinellas County, Florida's Motion for Summary Judgment (Doc. # 63), filed on October 9, 2020. Pro se Plaintiff Angela M. Collins responded on November 16, 2020. (Doc. # 67). For the reasons that follow, the Motion is granted.

**I.**    **Background**

    **A.**    **Position as Bus Driver and Benefits**

    In May 2005, the School Board hired Collins as a substitute bus driver; four months later, she was promoted to regular bus driver. (Doc. # 64 at 45:18-24; Doc. # 64-1 at 25-26). Collins previously had been employed with the School Board in food service and student support services. (Doc. # 64-1 at 23-24). She resigned her employment in September 2006

1

and later applied and was hired again as a driver in 2007. (Id. at 30-31). Collins was employed in this position until her resignation on May 22, 2019. (Doc. # 65-3 at 23). She was a 9-month employee, working from August until May. (Doc. # 64-4 at 1).

As a bus driver, Collins was required to have and maintain a Class B license, to drive with care at all times, to instruct students in safe riding practices, and to safely transport students. (Doc. # 64 at 47:1-19, 50:15-17; Doc. # 64-1 at 27-29). Although it was not listed in the job description (Doc. # 67-2 at 33-35), Collins testified it was an essential function of the job for a driver to be able to look left, right, and behind. (Doc. # 64 at 49:18-24). Attendance at work also was an essential function of the job as this was not a position that could be performed at home. (Id. at 49:25-50:8). Additionally, it was an essential function of the job to be able to reach and grasp objects; to have manual dexterity or fine motor skills; to work in an area that is somewhat uncomfortable due to extreme temperature, noise levels, or other conditions; to operate a vehicle; and to lift and carry objects up to 50 pounds. (Id. at 47:20-48:4; Doc. # 64-1 at 27-29).

The School Board has a policy providing twelve weeks of unpaid leave when the employee is unable to perform his or her job functions due to an employee's serious health condition under the FMLA. (Doc. # 64-3 at 5-12). This policy requires any accrued paid leave to run concurrently. (Id. at 8). Additionally, any employee who takes leave for this reason must provide a fitness-for-duty certification "that specifically addresses the staff member's ability to perform the essential functions of his/her job" before returning to work. (Id. at 11). During the period of leave under this policy, the employee does not accrue leave or any other benefits. (Id.).

The School Board also has an employee benefits policy. (Doc. # 64-3 at 1-4). This policy provides that, while an employee is on unpaid, non-FMLA leave, the employee is "required to pay the entire cost of all insurance plans." (Id. at 3).

The School Board's leave of absence policy provides that it may grant a leave of absence "for a specific period of time with the right to return to employment upon the expiration of leave." (Id. at 13). It also has a policy providing a paid leave of absence of up to ten days for any work-related injury or illness during the year in which the

3

illness or injury occurred. (Id. at 14). An employee may use accrued sick leave when the employee is unable to perform his or her job duties. (Id. at 17).

Collins was a member of the bargaining unit represented by SEIU. (Doc. # 64 at 83:17-19, 93:7-10). SEIU and the School Board entered into a collective bargaining agreement (CBA) that governed Collins' employment. (Doc. # 64-3 at 20-77). This CBA provided that an extended, unpaid leave of absence may be granted for health or other reasons, but that leave shall not exceed 30 days. (Id. at 45). However, this is not a job-protected leave. (Id. at 46). Upon return from leave, the employee will be placed in the same position if there is a vacancy available. (Id.).

Collins was granted all of the leave provided under the School Board's policies and the CBA with the union. (Doc. # 65-3 at 53; Doc. # 64 at 97:19-22, 98:21-23).

**B.**    **Earlier Accidents and Performance Reviews**

On January 15, 2010, eight years before the accident at issue in this case, Collins reported that she experienced a work-related injury and made a claim for workers' compensation. (Doc. # 64 at 102:9-12, 103:2-8; Doc. # 64-4 at 2). As a result of this accident, Collins requested and was granted leave from work. (Doc. # 64 at 107:16-22; Doc. # 64-

4

4 at 10). Ultimately, by March 25, 2010, she was released from care at maximum medical improvement with a zero percent impairment rating. (Doc. # 64 at 112:8-14; Doc. # 64-4 at 13).

The School Board reviews every accident involving a bus driver. (Doc. # 64 at 109:5-8). If the driver is found at fault or the accident was preventable, then it assesses points, which may result in disciplinary action. (Id. at 109:9-12).

Although it knew of Collins' claim for workers' compensation benefits, the School Board concluded that she was not at fault for this accident in 2010 and she was not disciplined. (Doc. # 64 at 109:13-19; Doc. # 64-4 at 11). Collins was also not disciplined for any other accidents that occurred thereafter. (Doc. # 64-4 at 15).

On March 15, 2010, two months after she reported her first work-related injury, Collins received a mostly positive performance evaluation. (Doc. # 64 at 110:18-111:1; Doc. # 64-4 at 12). Thereafter, she continued to receive positive performance evaluations in 2012, 2013, 2014, 2015, 2016, 2017, and 2018. (Doc. # 64-4 at 19-20, 23-27; Doc. # 64 at 117:7-118:2, 120:3-122:8). She also received a commendation for her performance on March 6, 2014. (Doc. # 64-4 at 21).

5

During the first week of April 2018, Collins reported to a supervisor, Area Manager Felicia Salters, "about harassment and bullying at the time clock by supervisor Karen Upchurch and co-workers." (Doc. # 67-6 at 3). "Salters moved the time clock a week later." (<u>Id.</u>).

### C. **<u>April 2018 Accident and Subsequent Claim</u>**

On April 19, 2018, Collins was involved in accident where a fire truck hit the driver's side of her bus while she was stationary at a red light. (Doc. # 64 at 122:16-19; Doc. # 64-4 at 45). The following morning, Collins reported the accident to her supervisor. (Doc. # 64 at 126:11-127:5).

After reporting this injury and making the workers' compensation claim, Collins was treated by Dr. Johnson, a doctor provided by the workers' compensation carrier, the same day that she reported the injury. (Doc. # 64-4 at 29-31). He treated her for a neck sprain following a motor vehicle accident and found that she had no functional limitations. (<u>Id.</u>). By May 3, 2018, Dr. Johnson found that Collins had reached maximum medical improvement with a zero percent impairment rating and no functional limitations. (<u>Id.</u> at 35-36).

Despite having knowledge of Collins' claim for workers' compensation benefits, the School Board concluded that the

accident on April 19th was not preventable and she was not disciplined in any way related to this accident. (Id. at 44; Doc. # 64 at 136:17-21).

Around this time, Salters "threatened to send [Collins] to the Office of Professional Standards for stealing time a week after [she] filed her worker's compensation claim" because Salters "said no one could work that much overtime in two weeks." (Doc. # 67-6 at 5).

Later, in August 2018 when the new school year started, Collins's "seniority to bid on a newer bus was taken away" and "[a] week later her bus was dead lined." (Id. at 6). As a result, Collins drove "faulty buses and did not have a permanent bus from August 2018 through November 16, 2018." (Id.). She "continue[d] to have serious unsafe, hazardous mechanical problems with her buses, electrical wiring, lifts falling out, [a] bus catching on fire, [and a] serious gas leak with students aboard." (Id. at 7). Despite her complaints about the faulty buses, "[n]o investigations, nothing was ever done about it." (Id.).

### D. **Multiple Leaves of Absence**

Collins did not seek any leave related to the April 19, 2018, injury until November 29, 2018. (Doc. # 64 at 145:8-146:1; Doc. # 64-4 at 47). On November 29, 2018, she made a

request for an initial leave of absence. (Doc. # 64-4 at 47; Doc. # 64 at 144:12-14, 145:13-15). She reported that this leave would be a short-term leave of 30 days or less. (Doc. # 64-4 at 47). The reason provided for this leave was "sick due to injury to neck." (Id.).

Her leave request was approved the next day by her supervisor and two days later by Human Resources and the School Board. (Id.). Her initial leave request was approved through December 24, 2018, but it was later extended through February 28, 2019. (Id.).

On November 30, 2018, Collins' doctor certified that that she was unable to work because she could not drive a bus. (Doc. # 64-5 at 1-4). Her doctor recommended a leave of absence through December 24, 2018, and then Collins would attempt to return to work. (Id. at 3). Her doctor also noted that she may need a leave of absence of three months in order to obtain surgery. (Id.).

Collins was granted a three month leave of absence, but she never attempted to return to work. (Doc. # 64 at 145:24-146:1). Despite her request for leave and her doctor's certification, she testified in her deposition she could have performed the essential functions of the job at the time of this leave. (Id. at 146:13-15, 209:15-25). Specifically, when

asked if she was "able to perform the essential functions of [her] job" between November 27, 2018, and February 28, 2019, Collins responded "Yes." (Id. at 146:10-15).

In February 2019, Collins reported to her doctor that she had weakness and limited mobility in her left arm and that she could not use her arm often. (Doc. # 64-5 at 7-8). She testified that this mobility in her left arm did not impact her ability to perform her job functions. (Doc. # 64 at 161:5-11). Yet, she did not return to work. (Id. at 162:25-163:6).

While Collins was on a leave of absence, and after it had knowledge of her April 2018 workers' compensation claim, the School Board evaluated her performance on February 14, 2019, and gave her a positive performance evaluation. (Doc. # 64-5 at 9; Doc. # 64 at 163:14-19).

Dr. Ramos, a doctor provided by the workers' compensation carrier, treated Collins on February 18, 2019. (Doc. # 64-5 at 10-12). Dr. Ramos concluded that Collins had reached maximum medical improvement with a zero percent impairment rating and no functional limitations. (Id. at 10-15).

After receiving three months of leave and exhausting her leave under the FMLA, Collins sought a second leave of absence

on March 5, 2019, in order to continue her leave from work. (Id. at 17). In this request, she sought leave from March 1, 2019, until April 8, 2019. (Id.). This leave request was granted the next day. (Id.).

To support this leave request, Collins provided a note from Dr. Wall indicating that she was unable to work as of February 26, 2019, and that she was to return for a reevaluation in 30 days. (Doc. # 64-5 at 16). He informed Collins the same day that "she is going to require surgery." (Doc. # 65-1 at 2).

Collins sought an evaluation with Dr. Bono at BioSpine for surgery on March 4, 2019. (Doc. # 64-5 at 18-28). In this evaluation, she noted that she was experiencing weakness in her left arm, having difficulty walking, and experiencing numbness in her extremities. (Id.; Doc. # 65-1 at 9). Dr. Bono recommended surgical intervention. (Doc. # 64-5 at 27).

Despite the doctor's opinion that the injury would restrict or impair her ability to drive a bus, Collins testified that she was able to perform the essential functions of the job at this time. (Doc. # 64 at 146:10-22, 162:15-24; Doc. # 64-5 at 28).

Nonetheless, on April 1, 2019, Collins scheduled surgery on her neck for April 10, 2019. (Doc. # 64-6 at 1-2; Doc. #

65 at 281:13-15). That same day, Dr. Bono wrote a note where he indicated that Collins "will be having a cervical disc replacement on 4/10/2019" and asked for her to be excused "from work/school from 4/10/2019 to 5/22/2019 and following date will be determined at post op appointment." (Doc. # 64-2 at 37).

On April 3, 2019, Collins made a third request for a leave of absence. (Doc. # 64 at 180:17-20; Doc. # 64-6 at 3). She requested leave from April 9, 2019, until May 22, 2019, which was a continuation of the leave of absence that was to expire on April 8, 2019. (Doc. # 64-6 at 3). She explained that the reason for the leave of absence was "surgery." (Id.; Doc. # 64 at 181:3-9).

This request was granted the same day that Collins requested it, and the School Board indicated that her position would be held until May 22, 2019. (Doc. # 64-6 at 3; Doc. # 64 at 181:10-12).

Despite Collins' representation that she needed this leave of absence for surgery, she cancelled the surgery scheduled for April 10, 2019. (Doc. # 65-1 at 31). Although the School Board's Human Resources Director, Sherry Aemisegger, asserted that Collins had not told HR about the cancelled surgery (Doc. # 64-6 at 29), Collins averred in her

affidavit that she told an HR assistant that the surgery was cancelled. (Doc. # 67-6 at 17). Collins did not return to work even though she testified that she could have performed her job functions at that time. (Doc. # 64-6 at 29; Doc. # 64 at 146:10-22, 162:15-163:6).

The last time that Collins saw Dr. Bono was on April 1, 2019, and she did not thereafter reschedule the surgery. (Doc. # 64 at 37:11-19; Doc. # 65 at 281:9-21, 317:22-24; Doc. # 65-1 at 32; Doc. # 64-2 at 27). No other doctor recommended surgery for Collins or opined that she needed a leave of absence for surgery. (Doc. # 65 at 317:25-318:2).

Collins again sought treatment from Dr. Ramos beginning on April 8, 2019. (Doc. # 64-6 at 5-7). Dr. Ramos treated her for a cervical strain, but he opined that it was undetermined whether this strain was work-related. (Id.). He concluded that she had no functional limitations. (Id.). While Dr. Ramos recorded that Collins "has significant difficulties with the physical requirements of her job" and she has a limited range of motion, Collins testified in her deposition that she could have performed her job duties at this time. (Id. at 8-11; Doc. # 64 at 146:10-22, 162:15-24, 209:15-25).

By April 29, 2019, Dr. Ramos concluded that no further clinical services were needed, Collins reached maximum

12

medical improvement with a zero percent impairment rating and no functional limitations, and that it was undetermined as to whether her injury was work-related. (Doc. # 64-6 at 23-24). She was discharged from care. (Id. at 26-28).

Yet, according to Collins, she has "a Cervical Herniated Disc in her neck and needs surgery to correct." (Doc. # 64-2 at 13). Still, she failed to identify in her answers to interrogatories a major life activity that is substantially limited by her condition, merely stating that the herniated disc "makes it hard to do manual labor" and "substantially limit[s] [her] performing a major life activity as compared to most people in the general population." (Id. at 14). At most, in her amended answers to the School Board's requests for production, Collins stated: "Neck pain, limited mobility makes it hard to do manual labor compared to most people in the general population. Pain, in neck, thinking, concentration, sleep, scientific evidence (MRI) Cervical disc herniation." (Doc. # 67-4 at 60).

Collins contends that, on April 29, 2019, she did not have use of her neck, shoulder, arm, and hand and also had limited mobility and function. (Doc. # 65-3 at 13). Nonetheless, she testified in her deposition that, at this

time, she was able to perform her job functions. (Doc. # 64 at 146:10-22, 162:15-24).

### E. __Plaintiff's Fourth Request for a Leave of Absence__

On May 14, 2019, Collins made a fourth request for a leave of absence. (Doc. # 64-6 at 29; Doc. # 64 at 190:8-10). In this request, she requested a five-day leave of absence, from May 23, 2019, to May 28, 2019. (Doc. # 64-6 at 29).

On May 14, 2019, Collins informed the School Board, for the first time, that her surgery did not occur on April 10, 2019. (Id.). HR Director Aemisegger explained that Collins' third request for a leave of absence was granted based on Dr. Bono's opinion that she would need to be excused from work due to the surgery and that she should have informed the School Board if the reason for leave no longer existed. (Id.).

With respect to Collins' fourth request for a leave of absence, the School Board denied this request, explaining that she had "exhausted any further leaves" of absence. (Id.). However, it gave Collins two choices: (1) return to work on May 23, 2019, with a doctor's note indicating that she was fit for duty or (2) resign her position and reapply when she is able to return to work. (Id.).

Collins contends that she needed this five-day leave of absence to have surgery. (Doc. # 65 at 350:8-16). However, at

14

the time she requested this fourth leave of absence, she did not have surgery scheduled. (Id. at 241:5-7; Doc. # 64 at 37:11-19). She admits that she was not going to have surgery during the five-day leave of absence. (Doc. # 64 at 78:1-6). Instead, she contends that she wanted the leave to take her to the end of the school year and then she could have the surgery "over the summer." (Doc. # 65 at 240:14-17, 350:11-12). Collins admits that this surgery was never scheduled "over the summer." (Id. at 241:5-7; Doc. # 64-2 at 27).

Collins would not have returned to work on May 29, 2019, even if this leave had been granted, because that was the last day of school. (Doc. # 64 at 191:6-11). She intended to come back to work in "August, the new school year." (Id.).

**F. Plaintiff's Resignation**

Despite the fact that Collins contends she could have performed her job functions as of May 23, 2019, she did not return to work. (Doc. # 64 at 162:15-24, 209:15-25; Doc. # 65 at 332:9-12). While Collins never went to a doctor to obtain a fitness-for-duty note, Dr. Ramos had certified on April 29, 2019, that she had no functional limitations and could have returned to work. (Doc. # 65 at 392:1-3; Doc. # 64-6 at 23-24).

On May 22, 2019, Collins resigned her employment and has not applied for any vacancy since her resignation. (Doc. # 65-3 at 23; Doc. # 65 at 470:20-471:4). The School Board informed Collins that her health insurance benefits would continue through May 31, 2019. (Doc. # 64-2 at 4). She, however, did not have the surgery during this period of time. (Doc. # 64 at 37:11-16; Doc. # 65 at 241:5-7). In addition, after her resignation, she elected to continue her health benefits through COBRA coverage. (Doc. # 64-6 at 37).

Collins certified to the Department of Economic Opportunity that she was able and available for work from May 26, 2019, through June 1, 2019, which included part of the five-day leave of absence sought from Defendant. (Id. at 32).

On July 18, 2019, Collins was evaluated by Dr. Christopher Lee, another doctor provided by the workers' compensation carrier. (Id. at 38-39). Dr. Lee opined that Collins' injury was not work-related and she achieved maximum medical improvement with a zero percent impairment rating and no functional limitations. (Id.). Dr. Lee opined that no further clinical services were needed, and her work status was full duty. (Id. at 38-39, 45).

On September 13, 2019, Collins created an account with the Social Security Administration and applied for disability

benefits related to her neck injury. (Doc. # 65-3 at 1-2; Doc. # 65 at 334:18-22, 335:6-7, 335:25-336:5, 337:1-9, 346:4-6). As part of her application, the Social Security Administration sought records from the medical providers who treated Collins related to her neck injury. (Doc. # 65-3 at 3-6). Collins refused to provide any explanation for her request for social security disability benefits during her deposition. (Doc. # 65 at 335:18-22, 336:9-24).

According to Collins, some of her co-workers were permitted to stay on medical leave longer than she was. (Doc. # 67-6 at 24-26). For example, bus driver Stephanie Hayes also had a cervical disc injury and had the same cervical disc replacement surgery Collins maintains she needed. (Id. at 24). Hayes was out "on unpaid medical leave" with "no accrued sick leave" from January 2018 through July 5, 2018, at which point she returned to work with the School Board. (Id.). She worked for the School Board until her retirement in 2020. (Id.).

Collins initiated this action against the School Board on August 27, 2019, asserting claims for failure to accommodate under the Americans with Disabilities Act (ADA) (Count I), failure to accommodate and disability discrimination under the Florida Civil Rights Act (FCRA)

17

(Count II), and worker's compensation interference and retaliation under Florida Statute § 440.205 (Count III). (Doc. # 1). The School Board filed its answer on October 22, 2019. (Doc. # 14). The case then proceeded through discovery.

The School Board moved for summary judgment on October 9, 2020. (Doc. # 63). Collins has responded (Doc. # 67), and the Motion is ripe for review.

## II.  Legal Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute alone is not enough to defeat a properly pled motion for summary judgment; only the existence of a genuine issue of material fact will preclude a grant of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

An issue is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Mize v. Jefferson City Bd. of Educ., 93 F.3d 739, 742 (11th Cir. 1996)(citing Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 913, 918 (11th Cir. 1993)). A fact is material if it may affect the outcome of the suit under the governing law. Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir.

1997). The moving party bears the initial burden of showing the court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. Hickson Corp. v. N. Crossarm Co., 357 F.3d 1256, 1260 (11th Cir. 2004)(citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). "When a moving party has discharged its burden, the non-moving party must then 'go beyond the pleadings,' and by its own affidavits, or by 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial." Jeffery v. Sarasota White Sox, Inc., 64 F.3d 590, 593-94 (11th Cir. 1995)(quoting Celotex, 477 U.S. at 324).

If there is a conflict between the parties' allegations or evidence, the non-moving party's evidence is presumed to be true and all reasonable inferences must be drawn in the non-moving party's favor. Shotz v. City of Plantation, 344 F.3d 1161, 1164 (11th Cir. 2003). If a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, the court should not grant summary judgment. Samples ex rel. Samples v. City of Atlanta, 846 F.2d 1328, 1330 (11th Cir. 1988). But, if the non-movant's response consists of nothing "more than a repetition of his

conclusional allegations," summary judgment is not only proper, but required. Morris v. Ross, 663 F.2d 1032, 1034 (11th Cir. 1981).

## III. Analysis

### A. Failure to Accommodate and Disability Discrimination

In her complaint, Collins asserts claims for failure to accommodate under the ADA (Count I) and failure to accommodate and disability discrimination under the FCRA (Count II). (Doc. # 1 at 5-8). "Given the parallel structure of the statutes, this Court analyzes state-law disability discrimination claims under the FCRA using the same framework as it does for claims made under the federal" ADA. D'Onofrio v. Costco Wholesale Corp., 964 F.3d 1014, 1021 (11th Cir. 2020).

In order to succeed on a discrimination claim, Collins must show that: "(1) [s]he is disabled; (2) [s]he was a qualified individual at the relevant time, meaning [s]he could perform the essential functions of the job in question with or without reasonable accommodations; and (3) [s]he was discriminated against [] because of [her] disability." Scott v. Shoe Show, Inc., 38 F. Supp. 3d 1343, 1359 (N.D. Ga. 2014)(citation omitted). To prove a failure to accommodate, Collins must show that "(1) she was a qualified individual

20

with a disability; (2) she made a specific request for a reasonable accommodation; and (3) her employer, [the School Board], failed to provide a reasonable accommodation, or engage in the requisite interactive process in order to identify a reasonable accommodation." D'Onofrio, 964 F.3d at 1021.

"The term 'disability' means, with respect to an individual — (A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1). "[C]ourts are instructed that '[t]he term "substantially limits" shall be construed broadly in favor of expansive coverage, to the maximum extent permitted by the terms of the ADA.'" Vaughan v. World Changers Church Int'l, Inc., No. 1:13-CV-0746-AT, 2014 WL 4978439, at *8-9 (N.D. Ga. Sept. 16, 2014)(quoting 29 C.F.R. § 1630.2(j)(1)(i)). "Under this more lenient standard, courts consider whether an impairment 'substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population.'" Id. (quoting 29 C.F.R. § 1630.2(j)(ii)). Nevertheless, Collins bears the burden of establishing that her impairment substantially limited a

major life activity. See Hunter v. U.S. Postal Serv., 535 F.
App'x 869, 872 (11th Cir. 2013)("Hunter bears the burden of
"offering evidence that the extent of the limitation" caused
by the impairment is substantial." (citation omitted)).

Collins's claims fail because she is not disabled. In
her sworn answers to interrogatories, Collins stated that she
has "a Cervical Herniated Disc in her neck and needs surgery
to correct." (Doc. # 64-2 at 13). Yet, in these same answers
to interrogatories, she failed to identify a major life
activity that is substantially limited by her condition
besides stating that the herniated disc "makes it hard to do
manual labor" and "substantially limit[s] [her] performing a
major life activity as compared to most people in the general
population." (Id. at 14).

Reading her amended answers to the School Board's
requests for production liberally, Collins has asserted that
her neck injury limited the major life activities of "manual
labor," "thinking, concentration, [and] sleep." (Doc. # 67-4
at 60). However, these vague assertions of substantial
impairments are insufficient. See Hunter, 535 F. App'x at
872-73 ("She contends, with no evidentiary support, that she
has substantial impairments in sleeping, manual tasks, and
her general quality of life, including her ability to garden

and care for her grandchildren. These amorphous, unsupported assertions, however, are exactly the kind we have dismissed as insufficient in similar cases.").

Furthermore, she also stated that she "can perform all the essential functions of a school bus driver" "without a[n] accommodation," (Doc. # 64-2 at 15-16), which she reaffirmed in her deposition testimony. (Doc. # 64 at 146:10-15, 161:5-13, 162:15-24). Finally, Dr. Ramos concluded by April 29, 2019 — before Collins' fourth request for a leave of absence on May 14, 2019 — that Collins had no functional limitations, had a zero percent impairment rating, required no further clinical services, and was discharged from care. (Doc. # 64-6 at 23-28). Given this, there is no genuine issue of material fact regarding whether Collins is disabled. See Brewer v. Sears, Roebuck & Co., 315 F. Supp. 2d 295, 298 (W.D.N.Y. 2004)("Plaintiff has failed to establish the first element that he is disabled within the meaning of the ADA. . . . Although he had a herniated disk in his back, the evidence showed that it had healed and that his doctor cleared him to return to work without any restrictions.").

Even if Collins were disabled, her failure to accommodate claim would still fail. "[T]here are limits to the accommodations an employer must provide. The key is

23

'reasonability,' meaning an employer is not required to accommodate an employee in *any* manner that the employee desires — or even provide that employee's preferred accommodation." D'Onofrio, 964 F.3d at 1022. "[I]f an employee does not require an accommodation to perform her essential job functions, then the employer is under no obligation to make an accommodation, even if the employee requests an accommodation that is reasonable and could be easily provided." Id. "[E]ven if an employer has voluntarily provided accommodations to the employee historically, that employer is not obligated to continue providing them and can discontinue such when they exceed what is legally required under the ADA." Id.

Here, Collins admitted that she could perform all the essential functions of her job without an accommodation. (Doc. # 64-2 at 16). And, even if Collins did require an accommodation, her request for an additional five-day leave of absence was not reasonable. The School Board had already provided Collins months of leave, including granting her third leave request based on her scheduled surgery in April 2019. After cancelling the surgery, Collins requested yet another leave of absence in order to have the surgery; yet, Collins did not have the surgery rescheduled during that five-

day period or for any time after that period. (Doc. # 64 at 37:11-19; Doc. # 65 at 281:9-21, 317:22-24; Doc. # 65-1 at 32; Doc. # 64-2 at 27). Without having the surgery rescheduled, Collins's request for yet another medical leave of absence based on the need for surgery was unreasonable as a matter of law.

Finally, even if she were disabled, Collins's disparate treatment disability discrimination claim would still fail because she did not suffer an adverse employment action. Here, because Collins resigned (Doc. # 65-3 at 23), the potential adverse employment action is constructive discharge. "A constructive discharge occurs when a discriminatory employer imposes working conditions that are 'so intolerable that a reasonable person in [the employee's] position would have been compelled to resign.'" Fitz v. Pugmire Lincoln-Mercury, Inc., 348 F.3d 974, 977 (11th Cir. 2003)(citation omitted). This is a high standard and "[o]ne's working environment does not become objectively intolerable simply because it becomes less attractive." Hipp v. Liberty Nat'l Life Ins. Co., 252 F.3d 1208, 1231-1235 (11th Cir. 2001).

"Establishing a constructive discharge claim is a more onerous task than establishing a hostile work environment claim." Bryant, 575 F.3d at 1298. Thus, necessarily, the

25

conduct complained of must be "extreme [enough] to amount to a change in the terms and conditions of employment." Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998). "'[S]imple teasing,' offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'" Id. (citation omitted). Constructive discharge cannot be established by the "the ordinary tribulations of the workplace, such as the sporadic use of abusive language." Id. (citation omitted).

The Court agrees with the School Board that the actions of which Collins complains fall short of establishing constructive discharge. (Doc. # 63 at 20-22). At the time of her resignation in May 2019, Collins had been on a continuous leave of absence since November 27, 2019, and thus had not been subjected to any objectively intolerable working conditions for around six months. While Collins outlines certain unpleasant interactions with supervisors in her affidavit and unpleasant working conditions in the form of "faulty buses" (Doc. # 67-6 at 3-11), these conditions were not objectively intolerable and almost entirely preceded her leave that began in November 2019. Additionally, the School Board gave her the option to come back to work at the end of her leave of absence. See Coppinger v. Wal-Mart Stores, Inc.,

No. 3:07CV458/MCR/MD, 2009 WL 3163211, at *10 (N.D. Fla. Sept. 30, 2009)("[I]t would defy common sense to conclude that an employer who invites an employee back to work and encourages him to apply for a position higher than his current job is deliberately acting to make the employee's work conditions intolerable."). These facts are insufficient to establish a constructive discharge.

Nor has Collins identified a similarly situated individual without a disability who was treated more favorably. Collins has only identified co-workers who were also granted medical leave to have surgeries, but who continued their employment with the School Board. (Doc. # 67-4 at 56-57).

Therefore, summary judgment is granted in favor of the School Board on Counts I and II.

B. **Worker's Compensation Retaliation**

In Count III of the complaint, Collins asserts a claim for worker's compensation retaliation under Florida Statute § 440. 205. (Doc. # 1 at 8). Section 440. 205 provides that: "No employer shall discharge, threaten to discharge, intimidate, or coerce any employee by reason of such employee's valid claim for compensation or attempt to claim

compensation under the Workers' Compensation Law." Fla. Stat. § 440.205.

"A [Section] 440.205 claim has the same elements as employment retaliation claims under federal law: (1) the employee engaged in statutorily protected activity, (2) was subjected to an adverse employment action, and (3) there was a causal relationship between the protected activity and the adverse employment action." Juback v. Michaels Stores, Inc., 143 F. Supp. 3d 1195, 1203 (M.D. Fla. 2015). "Such claims are subject to the burden-shifting framework set out in McDonnell Douglas Corporation v. Green, 411 U.S. 792 [] (1973), under which the plaintiff must come forward with a prima facie case." Id. "The burden then shifts to the defendant to articulate a non-discriminatory reason for the adverse action, and if that burden is met, the plaintiff must demonstrate that the defendant's reason was pretextual." Id.

This claim fails for multiple reasons. First, Collins has not shown that she was subjected to a materially adverse employment action. The only adverse action Collins identifies in her response is the School Board's denial of her final request to extend her leave of absence by five days, after she had already been on leave for nearly six months. (Doc. # 67 at 18). In denying the request, the School Board gave

Collins the option to return to work, but Collins resigned instead. No reasonable jury could find that the School Board's action in denying another extension of Collins's leave was the type that could dissuade a reasonable worker from making a workers' compensation claim in the first place. See Juback, 143 F. Supp. 3d at 1206 ("To demonstrate that a challenged employment action was 'materially adverse,' a plaintiff must show 'it well might have dissuaded a reasonable worker from [engaging in protected activity].'" (citation omitted)).

Second, Collins has not shown causation. She made her request for worker's compensation in April 2018 and went out on medical leave in November 2018, but did not resign until May 2019 when her leave was over. See Billups v. Emerald Coast Utils. Auth., 714 F. App'x 929, 937 (11th Cir. 2017)("[T]he temporal proximity between Billups worker's compensation claim and his termination — over six months — was not sufficiently close to establish a causal connection."); see also Pericich v. Climatrol, Inc., 523 So. 2d 684, 686 (Fla. 3d DCA 1988)(stating there was no evidence of retaliation where the defendant "continued to employ [plaintiff] for over a year after he filed his compensation claim" and terminated him only "when it became apparent [he] would be physically unable to resume his former position"). The "faulty buses"

Collins had to drive before she went out on medical leave and her unpleasant interactions with Salters in April 2018 are not sufficient to show causation, given Collins was granted nearly six months of medical leave for her injury after those events.

Even if Collins had established a prima facie case of retaliation, the School Board has produced a legitimate non-retaliatory reason for its actions — specifically, Collins's "failure to return to work." (Doc. # 63 at 23). And Collins has not presented sufficient evidence to establish a genuine issue of material fact regarding pretext. Although some fellow employees who also filed worker's compensation claims were allowed to stay out on leave longer than Collins (Doc. # 67-6 at 24-26), this does not support that Collins was retaliated against for filing a worker's compensation claim. Furthermore, Collins was not disciplined for the accident that led to her worker's compensation claim and was granted three requests for leave. (Doc. # 64-4 at 44; Doc. # 64 at 136:17-21).

There is no genuine issue of material fact regarding Collins's worker's compensation retaliation claim, and summary judgment is granted in favor of the School Board on Count III.

Accordingly, it is now

**ORDERED, ADJUDGED,** and **DECREED:**

(1)    Defendant School Board of Pinellas County, Florida's Motion for Summary Judgment (Doc. # 63) is **GRANTED.**

(2)    The Clerk is directed to enter judgment in favor of Defendant School Board of Pinellas County, Florida and against pro se Plaintiff Angela M. Collins on all counts of the complaint.

(3)    Thereafter, the Clerk is directed to terminate all pending deadlines and **CLOSE** the case.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 19th day of November, 2020.

_Virginia M. Hernandez Covington_
VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE